IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| CHRISTOPHER L. BRAXTON,<br>Institutional ID No. 01853756,<br>SID No. 07261548,<br>Previous TDCJ No. 01767471,<br><br>        Plaintiff,<br><br>v.<br><br>CAPT. RAUL S. RENTERIA,<br>T.D.C.J.'s Smith Unit, *et al.*,<br><br>        Defendants. | CIVIL ACTION NO.<br>5:17-CV-125-BQ<br>ECF |

## REPORT AND RECOMMENDATION

Braxton, who alleges Defendants subjected him to excessive force and subsequently denied him due process, brings this action under 42 U.S.C. § 1983 against multiple correctional officers for injuries he allegedly sustained as a result. For the reasons that follow—including that Braxton has not alleged facts sufficient to show the use of constitutionally impermissible force or deprivation of a protected liberty interest—the undersigned recommends dismissal of Braxton's claims.

### I.    Statement of the Case

Proceeding pro se and *in forma pauperis*, Plaintiff Christopher L. Braxton filed this action under 42 U.S.C. § 1983 alleging Defendants violated his constitutional rights during his incarceration at the Texas Department of Criminal Justice's (TDCJ) Preston E. Smith Unit (Smith Unit). He seeks monetary damages.

Braxton filed his Complaint on June 14, 2017 (ECF No. 1), and the United States District Court subsequently transferred this case to the undersigned United States Magistrate Judge for

1

further proceedings. ECF No. 6. The undersigned thereafter reviewed Braxton's Complaint and authenticated records from TDCJ, and conducted an evidentiary hearing in accordance with *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985) and 28 U.S.C. §§ 1915 and 1915A. ECF No. 13.

Braxton has not consented to proceed before the undersigned magistrate judge. Pursuant to the order of transfer, the undersigned enters this Report and recommends the action be dismissed in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## II.   Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding

that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical or other prison records if they are adequately identified and authenticated").

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1339 (2017). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### III.   Braxton's Allegations

Braxton alleges that on June 7, 2016, Captain Raul S. Renteria, Lieutenant Gary B. King, Captain Trenton C. Peacock, Lieutenant Oliver L. Vasquez, and Sergeant Krista Vasquez subjected him to excessive force. Compl., at 3, 5–6.[1] Braxton claims that while attending a meeting with Counsel Substitute Kendra Stovall, he could not provide her with his name and TDCJ identification number due to his mental state, leading corrections officers to possibly think he was "deliberately being difficult." *Id.* at 6. He contends Captain Renteria appeared and told Braxton he was "done here," that he attempted to restrain Braxton and take him down to the ground, and "when [he] wouldn't go down" Braxton alleges Captain Renteria "began to punch [him] continuously." *Id.* Braxton claims Lieutenant King, Captain Peacock, and Lieutenant Vasquez then began grabbing him and attempting to pull him down to the ground to restrain him. *Id.* Braxton also alleges Lieutenant Vasquez sexually assaulted him by "grabbing [Braxton's] testicles, and attempting to put his hand up [Braxton's] anus" during the incident. *Id.* He further

---

[1] Page citations to Braxton's pleadings cite to the electronic page number assigned by the court's electronic filing system.

contends Sergeant Krista Vasquez "releas[ed] chemical agents on him instead of telling [the other officers] to stop assaulting him." *Id.* Braxton also alleges Major David H. Reed watched the incident unfold and did nothing to stop the other corrections officers from using force against him. *Id.* Braxton claims he suffered a busted lip, knee pain, and a knot on his head as a result of the incident.

Additionally, Braxton claims that Captain Ricardo Ramirez and Counsel Substitute Kendra Stovall violated his due process rights when they "allow[ed] the [June 8, 2016] disciplinary case [to] run w/o [his] presence after [he had] requested to attend as inmate advocate." *Id.* He also contends that Captain Sylvia Sauseda, as presiding officer over the July 19, 2016, disciplinary hearing, did not conduct a fair hearing because she was biased. *Id.* at 4. Moreover, Braxton alleges Captain Renteria and Captain Peacock brought a false disciplinary case against him. Compl., at 6. At the evidentiary hearing, Braxton also claimed Sergeant Jesus Lopez gave false testimony and falsified documents during the July 19 hearing, because Sergeant Lopez allegedly stated he served Braxton with the case when he did not. Finally, Braxton attempts to allege various claims under § 1983 against TDCJ. *Id.* at 4.

## IV. Discussion

### A. Braxton fails to state a § 1983 claim against Defendants for excessive use of force.

Braxton alleges Defendants' use of force on June 8, 2016, was excessive and violated the Eighth Amendment. Compl., at 3, 6. To establish a constitutional violation for excessive use of force by jail or prison personnel, a plaintiff must show that the defendant unnecessarily and wantonly inflicted pain. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Whether use of force is unnecessary or wanton depends on if the "force was applied in a good-faith effort to maintain or restore discipline or maliciously or sadistically to cause harm." *Hudson v. McMillian*,

503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320). Factors relevant to this determination include, but are not limited to, the following: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stadler*, 137 F.3d 836, 838 (5th Cir. 1998).

### 1. Braxton did not suffer more than de minimis *injuries.*

"The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir. 1996). Although the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm, the extent of a prisoner's injuries may provide some indication as to the amount of force applied. *Wilkins v. Gaddy,* 559 U.S. 34, 37–38 (2010). Thus, the absence of serious injury is a factor relevant to determining whether the force at issue violated the Constitution. *Id.*

Braxton alleges Defendants' use of force, applied in response to his refusal to submit to hand restraints, resulted in a busted lip, a knot on his head, and knee pain. Video footage and still pictures taken following the incident[2] confirm Braxton's busted lip, although the on-site nurse noted Braxton's lip was not bleeding and she stated that Braxton was suffering from no other visible injuries. The video footage also shows that Braxton did not complain of knee or head pain. Moreover, the day after the incident, the on-site nurse conducted a use of force physical examination. The nurse noted that Braxton had a small knot on the right side of his

---

[2] The video footage provided by TDCJ begins with two officers restraining Braxton. The authenticated records indicate that the delay in a video camera arriving occurred because the first camera brought to record the incident did not function properly.

head and a small laceration inside his lip. The report also states that Braxton denied any injuries or respiratory difficulty.[3] The authenticated records, and Braxton's own admissions at the evidentiary hearing, indicate Braxton never sought treatment for knee pain.

An inmate generally fails to state a claim of excessive use of force when he suffers a *de minimis* physical injury. *See, e.g., Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (affirming district court's dismissal of plaintiff's claims for excessive force where injury consisting of "a sore, bruised ear lasting for three days" was *de minimis*); *Young v. Saint*, No. 92-8420, 1993 WL 117991, at *3 (5th Cir. Mar. 31, 1993) (affirming order dismissing complaint pursuant to 28 U.S.C. § 1915 where injuries consisting of "an undetermined amount of blood and [] two small 'scratches'" were *de minimis*). The mere allegation of a busted lip, knee pain, and a knot on the side of a head does not meet the *de minimis* injury standard required for recovery of damages under § 1983. *See Siglar*, 112 F.3d at 193–94; *see also Keller v. Fla. Dep't of Corr.*, No. 4:14-CV-84-RH-GRJ, 2016 WL 8679264, at *13 (N.D. Fla. Oct. 21, 2016) ("Plaintiff's occasional knee pain and inflammation amount to nothing more than *de minimis* injuries."); *Hodge v. Williams*, Civ. A. No. 4:08-CV-330-Y, 2009 WL 111565, at *3 (N.D. Tex. Jan. 16, 2009) (finding as *de minimis* inmate's claimed injuries of "cuts on his hand," a cut inside his lip, and a sore neck); *Dale v. Officer Bridges*, No. 3:96-CV-3088-AH, 1997 WL 810033, at *3 (N.D. Tex. Dec. 22, 1997) ("Plaintiff's alleged injury—a swollen, black eye which lasted only a few days—does not satisfy

---

[3] Braxton states multiple times during the video that he has asthma and is having difficulty breathing; however, during the nurse's examination immediately after the incident Braxton is not wheezing and does not appear to be in any respiratory distress. Braxton did not allege, in his Complaint or at the evidentiary hearing, that he suffered any respiratory symptoms or problems. In any event, exposure to chemical agents without long-lasting effects constitutes, at best, a *de minimis* injury. *Bibbs v. Jones*, No. 11–1360, 2012 WL 1135584, *2 (W.D. La. Apr. 4, 2012) (concluding "a period of coughing, even for 'quite some time,' was a temporary effect of limited exposure to pepper spray and constitutes only [] *de minimis* physical injury").

the 'some injury' requirement of an excessive force claim."). Thus, Braxton has not demonstrated that he suffered more than *de minimis* injuries.

### 2. Defendants used force against Braxton in a good-faith attempt to restore order.

A claim for *de minimis* injuries may still survive if the conduct alleged is malicious or sadistic in nature, does not serve a good-faith purpose in restoring order, or is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 6, 10 (quoting *Whitley*, 475 U.S. at 320). Although Braxton takes exception to Defendants' conduct in this matter, he pleads no specific facts demonstrating Defendants acted in an unnecessary, malicious, or sadistic manner. Instead, Braxton states Captain Renteria applied force when Braxton acted in a way that could cause Captain Renteria to believe he was "deliberately being difficult," i.e., refusing to provide information (name and TDCJ identification number) he should clearly know, and that when Captain Renteria then attempted to restrain him, Braxton would not go down to the ground. Compl., at 6. It is within this context that Braxton claims Defendants unnecessarily punched, kicked, and grabbed at him, and sprayed him with chemical agents.

The authenticated records, however, confirm Braxton's admission that Defendants responded with force due to his refusal, whether consciously or not, to follow Defendants' orders. Initially, Braxton refused to leave Counsel Substitute Stovall's office (after Captain Renteria's command to do so) and stood in the doorway with both arms on the door frame. Captain Renteria ordered Braxton to turn around and submit to hand restraints; however, he refused. Shortly after Captain Peacock arrived and again ordered Braxton to submit to hand restraints, Braxton threw a punch at Captain Renteria's head. Captain Renteria, Captain Peacock, and Lieutenant King then attempted to take Braxton to the ground to restrain him.[4]  Braxton broke free and began throwing

---

[4] At the evidentiary hearing, Braxton stated his "body wouldn't allow" Renteria to take him to the ground. The court also notes Officer King suffered a broken leg during the incident with Braxton.

7

punches at Captain Renteria and Captain Peacock, who returned punches in self-defense. Lieutenant Vasquez then responded to assist. Braxton continued to resist Defendants' efforts until Sergeant Krista Vasquez released chemical agents on everyone involved in the scuffle, causing Braxton to fall to the floor. Lieutenant Vasquez then placed Braxton in hand restraints. As Defendants attempted to put him in leg restraints, Braxton began resisting again, but eventually became compliant. Braxton's general admissions, and the authenticated records, demonstrate the necessity for Defendants to use some degree of force, and Braxton's allegations and the records indicate Defendants' actions served a good-faith purpose in maintaining and restoring order. *See Reyes v. Chinnici*, 54 F. App'x 44, 47 (3d Cir. 2002) (noting officer's punch of inmate to avoid being assaulted was not excessive use of force); *Williams v. Kelly*, 624 F.2d 695, 698 (5th Cir. 1980) (holding that officer grabbing and putting inmate in chokehold when inmate became violent while resisting restraints did not constitute an excessive use of force); *Fairweather v. Giles Dalby Corr. Facility*, 154 F. Supp. 2d 921, 926 (N.D. Tex. 2001) (dismissing as frivolous inmate's *Bivens* claim where officers' release of chemical agents to subdue recalcitrant inmates did not constitute cruel and unusual punishment). Thus, the undersigned recommends that Braxton's excessive force claims be dismissed.

Braxton also alleges Lieutenant Vasquez sexually assaulted him during the incident by "grabbing my testicles, and attempting to put his hand up my anus." Compl., at 6. The authenticated records show Braxton did not make any such allegations while receiving medical treatment the day of the incident or the next day during the nurse's use of force examination. A nurse's note from Braxton's visit to the clinic over a month later indicates Braxton stated he was sexually assaulted during the June 7, 2016, use of force incident and wanted it noted in his record. The nurse observed, however, that Braxton's clothing was intact during the incident, and that he

denied any penetration during the alleged assault. Incident reports in the record indicate that the only contact Lieutenant Vasquez had with Braxton was placing hand restraints on him and holding him down while another officer applied leg restraints. As such, Braxton's claim against Lieutenant Vasquez is fanciful and should be dismissed. *See generally Hill v. McClure*, No. 92-7296, 1993 WL 347301, at *1 (5th Cir. Aug. 20, 1993) (quoting *Cay v. Estelle*, 789 F.2d 318, 327 (5th Cir. 1986)) ("A district court 'may consider credibility as a factor in determining frivolousness only to the extent that it believes a prisoner's allegations are almost impossible to prove . . . or postulate facts of a wholly fanciful kind.'").

Accordingly, Braxton fails to state a cognizable Eighth Amendment claim for use of force excessive to the need. Braxton's claims should be dismissed as frivolous.

**B. Braxton has failed to plead a cognizable failure to protect claim against Major Reed.**

Next, Braxton alleges Major Reed violated his constitutional rights by watching the incident and "not trying to even say stop to any of it." Compl., at 6. To the extent Braxton's allegations against Major Reed can be construed as a failure to protect claim, such a claim also fails.

A prison official's failure to intervene in others' use of excessive force against an inmate may violate the Eighth Amendment and subject the official to § 1983 liability. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (finding liability may exist where an official fails to take reasonable measures to protect a plaintiff from the use of excessive force); *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *5 (N.D. Tex. Mar. 27, 2015); *see also Spencer v. Rau*, 542 F. Supp. 2d 583, 594 (W.D. Tex. 2007) (relying on *Davis v. Rennie*, 264 F.3d 86, 97–98 (1st Cir. 2001)) (holding that an officer may be liable for failing to intervene if he "was present when the force was used, observed the use of excessive force, was in a position where he could

realistically prevent the force, and had sufficient time to prevent it"). Mere presence at the scene of the alleged use of excessive force, however, does not give rise to bystander liability; the officer must have "a reasonable opportunity to realize the excessive nature of the force and a realistic opportunity to stop it in order for the duty to intervene to arise." *Vasquez v. Chacon*, No. 3:08-CV-2046-M, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009).

As previously discussed, Braxton has not alleged a cognizable constitutional claim in regard to the officers' use of force. Because the determination as to whether an officer failed to protect an inmate from another officer's use of force necessarily requires that an excessive use of force occurred, Braxton's claim against Major Reed fails as a matter of law. *See Davis v. Cannon*, 91 F. App'x 327, 329 (5th Cir. 2004) (concluding that where the alleged actions did not constitute excessive force, bystanders are not liable for failing to intervene); *see also Simpson v. Flores*, No. SA-09-CV-0125 OG (NN), 2011 WL 675041, at *1 (W.D. Tex. Feb. 15, 2011) (noting courts must first determine whether an unconstitutional use of force took place to determine if an officer failed to protect an inmate); *Hicks v. Page*, Civ. A. No. H-08-2486, 2010 WL 793684, *7 (S.D. Tex. March 4, 2010) (dismissing as frivolous claim for bystander liability where inmate made no showing of force used in violation of the Eighth Amendment).

Moreover, Braxton has not pleaded any facts indicating Major Reed was in a position where he could have realistically prevented the use of force on Braxton or that he had sufficient time to do so. Without alleging such facts, such as where Major Reed was standing or how long he watched the incident, Braxton's claim that Major Reed failed to protect him cannot survive. *See Gilbert v. French,* No. CIV. A. H-06-3986, 2008 WL 394222, at *8 (S.D. Tex. Feb. 12, 2008) (granting summary judgement for defendants where plaintiff made no showing that officers had time to prevent use of excessive force that occurred over the span of a few seconds); *Paternostro*

*v. Crescent City Connection Police*, No. CIV. A. 00-2740, 2002 WL 34476319, at *11 (E.D. La. Apr. 2, 2002) (finding that bystander liability claim failed because evidence did not show location of officer such that he would have had a realistic opportunity to prevent use of excessive force). In effect, Braxton has only alleged that Major Reed was present at the scene of the incident, which fails to establish a constitutional violation. *Vasquez*, 2009 WL 2169017, at *6. As such, Braxton's claims against Major Reed should be dismissed as frivolous and for failure to state a claim.

### C. Braxton has failed to show Defendants denied him due process, as the punishments imposed on him in the disciplinary cases do not implicate any constitutionally protected liberty interests.

Braxton also alleges Counsel Substitute Kendra Stovall, Captain Ricardo Ramirez, Captain Sylvia Sauseda, Captain Renteria, Captain Peacock, and Sergeant Jesus Lopez violated his right to due process through various actions at his June 8, 2016, and July 19, 2016, disciplinary hearings. Compl., at 4, 6. To present a successful due process claim, a plaintiff must establish that (1) he possessed a protectable liberty interest, and (2) the defendants deprived him of that interest as a result of insufficient process. *See Luken v. Scott*, 71 F.3d 192, 194 (5th Cir. 1995).

#### 1. *Kendra Stovall and Captain Ricardo Ramirez did not violate Braxton's due process rights by holding a disciplinary hearing outside his presence.*

Braxton claims Counsel Substitute Kendra Stovall and Captain Ramirez improperly denied him the opportunity to attend his disciplinary hearing. Compl., at 4. At the evidentiary hearing, Braxton stated he asked to be present at the June 8, 2016, disciplinary hearing for case number 20160297402, in which he was charged with swearing, causing a disturbance, and failing to follow orders outside the chow hall; Defendants, however, conducted the hearing without him. *Id.* The authenticated records confirm Braxton's absence at the hearing. The authenticated records also indicate Kendra Stovall represented Braxton at the disciplinary hearing as his counsel substitute, and that Captain Ramirez presided over the hearing, finding Braxton guilty. As a result, Braxton

lost forty-five days' recreation time, and thirty days of commissary, property, and telephone privileges. Braxton admitted during the evidentiary hearing that TDCJ later overturned this conviction on appeal, although it appears Braxton had already lost the privileges and recreational time at that point. Despite the subsequent reversal, Braxton claims Defendants denied him due process in connection with the June 8, 2016, hearing because he was not present at the hearing. *Id.* at 4, 6.

Initially, the court notes that Braxton's claims against Kendra Stovall, as his counsel substitute, must be dismissed. The Fifth Circuit has held that counsel substitutes, in their function of representing inmates in disciplinary hearings, are not state actors and thus are not amenable to suit under § 1983. *Banuelos*, 41 F.3d at 234. As such, Braxton's claims against Stovall should be dismissed as frivolous in their entirety.

To the extent Braxton attempts to allege that Captain Ramirez denied him due process in connection with the June 8, 2016, disciplinary hearing, Braxton has not demonstrated deprivation of a protected liberty interest. An inmate charged with a prison rules disciplinary infraction is only entitled to protection under the Due Process Clause of the Fourteenth Amendment when the resulting punishment infringes on a constitutionally recognized liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 485–86 (1995). "A prisoner's constitutionally protected liberty interests are 'generally limited to freedom from restraint which . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Watkins v. Lnu*, 547 F. App'x 409, 410 (5th Cir. 2013) (quoting *Sandin*, 515 U.S. at 484). Protected "interests are generally limited to state-created regulations or statutes which affect the *quantity* of time rather than the *quality* of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added).

Here, the June 8, 2016, disciplinary hearing resulted in Braxton losing forty-five days' recreation time, and thirty days of commissary, property, and telephone privileges. Losing those privileges, however, does not implicate a liberty interest protected by the Due Process Clause. *See Sandin*, 515 U.S. at 485–86 (finding no liberty interest protecting against a thirty-day period of solitary confinement because the punishment was not a significant hardship and did not affect the duration of prisoner's sentence); *Watkins*, 547 F. App'x at 410 (holding that a "three-month loss of commissary, visitation, and telephone privileges did not implicate a liberty interest protected by the Due Process Clause"). Thus, Defendants did not deny Braxton any protected liberty interest through insufficient process at the June 8 disciplinary hearing. Braxton's claims against Captain Ramirez should be dismissed as frivolous and for failure to state a claim.

### 2. *Captain Sylvia Sauseda did not violate Braxton's right to due process during the July 19, 2016, disciplinary hearing.*

Next, Braxton claims Captain Sylvia Sauseda, the hearing officer at Braxton's July 19, 2016, disciplinary hearing in case number 20160343868, violated his due process rights because she "fail[ed] to recognize procedural error after clear and factual evidence showed such, being impartial." Compl., at 4. The hearing concerned Braxton's actions during the June 7, 2016, use of force incident. Officers charged Braxton with assaulting Lieutenant King. At the evidentiary hearing, Braxton clarified his claim by alleging that before the hearing took place Captain Sauseda pointed him out to another correctional officer and stated "that's the one that broke King's leg." Because of this alleged statement, Braxton alleges Captain Sauseda did not give him a fair and impartial hearing. *See id.*

The Fifth Circuit has explained that "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Frank v. Larpenter*, No. 99-31242, 2000 WL 1598076, at *3 (5th Cir. Oct. 3, 2000). "[T]he extent of impartiality required in prison

disciplinary proceedings must be gauged with due regard to the fact that they 'take place in a closed, tightly controlled environment' in which '[g]uards and inmates co-exist in direct and intimate contact.'" *Adams v. Gunnell*, 729 F.2d 362, 370 (5th Cir. 1984) (quoting *Wolff v. McDonell*, 418 U.S. 539, 560 (1974)). To prevail on a claim of adjudicator bias, an inmate must show that the hearing officer's involvement presented "such a hazard of arbitrary decision making that it should be held violative of due process of law." *Wolff*, 418 U.S. at 560.

Even assuming Captain Sauseda's statement indicates such arbitrary decision making and thereby gives rise to an actionable due process claim, Braxton has again not suffered the loss of any protected liberty interest. *See Luken*, 71 F.3d at 194. As a result of the hearing, Captain Sauseda found Braxton guilty, and similar to the previous hearing, Braxton lost forty-five days of recreation time, commissary, telephone, and property privileges, and also earned thirty days of cell restriction; however, the authenticated records again indicate TDCJ later overturned these punishments. As previously discussed, even if TDCJ had not removed these penalties, they do not implicate a protected liberty interest. *See Sandin*, 515 U.S. at 485–86; *Watkins*, 547 F. App'x at 410. Thus, Captain Sauseda did not deprive Braxton of any constitutionally recognized liberty interest and Braxton has failed to state a non-frivolous due process claim. The undersigned recommends that this claim be dismissed as frivolous and for failure to state a claim.

### 3. *Braxton fails to raise a viable due process claim against Captain Renteria and Captain Peacock for allegedly charging him with a false disciplinary case.*

Braxton also contends that Captain Renteria and Captain Peacock lied about the details of the June 7, 2016, use of force incident, and falsely charged him with a disciplinary case for assaulting Lieutenant King when he in fact did not do so. Compl., at 6. To the extent Braxton alleges Captain Renteria and Captain Peacock wrote up a false disciplinary case against him, the claim fails. A prisoner's assertion that defendants brought false charges against him does not, in

and of itself, implicate his constitutional rights. *Palmisano v. Bureau of Prisons*, 258 F. App'x 646, 647–48 (5th Cir. 2007) (affirming district court's dismissal of inmate's *Bivens* claim, Fifth Circuit held that alleged false report of furlough violation, resulting in solitary confinement and loss of commissary, visiting, and telephone privileges, provides no basis for claim of constitutional deprivation, and that bringing false charges, standing alone, implicates no constitutional right). And, as already discussed, Braxton cannot show that Defendants denied him due process, in that the punishments imposed in the July 19, 2016, disciplinary case do not implicate any constitutionally protected liberty interests. *See id.* Thus, Braxton has failed to state a cognizable claim against Captain Renteria and Captain Peacock and his claim should be dismissed as frivolous.

### 4. Sergeant Jesus Lopez did not violate Braxton's constitutional rights by allegedly violating TDCJ rules.

Braxton also claims Sergeant Lopez provided false testimony and documents at the July 19, 2016, disciplinary hearing. Compl., at 4. At the evidentiary hearing, Braxton further elaborated on his claim, alleging Sergeant Lopez stated he served Braxton with the disciplinary case, when he did not do so. Braxton claimed that this violated his constitutional rights because Sergeant Lopez's actions were "just a technical violation" of TDCJ rules; however, the Fifth Circuit has recognized that mere violation of prison rules does not create a claim of constitutional dimension. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). As such, Braxton has failed to state a non-frivolous claim against Sergeant Lopez and this claim should also be dismissed.

### D. TDCJ is not a proper defendant in this § 1983 action.

Braxton's claim that TDCJ, as an agency, is liable for the Smith Unit Officers' alleged excessive use of force, failure to protect, and due process violations, does not rise to the level of a

constitutional claim. TDCJ, as an agency of the State of Texas, is not a person within the meaning of § 1983. 42 U.S.C. § 1983 ("Every *person* who, under color of any statute, ordinance, regulation, custom, or usage . . . .") (emphasis added); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) ("Our conclusion that a State is not a 'person' within the meaning of § 1983 is reinforced by Congress' purpose in enacting the statute."); *Cornish v. Tex. Dep't of Criminal Justice*, No. 3:04-CV-0579R, 2006 WL 509416, at *3 (N.D. Tex. Mar. 2, 2006) (explaining that as an instrumentality of the state, TDCJ is immune from suit under the Eleventh Amendment for money damages and injunctive relief). Braxton therefore cannot maintain a claim against TDCJ for the alleged inadequacies of its employees, and his claim must be dismissed.

## V.  **Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Braxton's Complaint with prejudice in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## VI.  **Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. See 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge

that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: November 15, 2017

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE